**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHALIK COLEMAN,<br>Plaintiff,<br>v.<br>CORIZON MEDICAL, et al.,<br>Defendants. | Civil Action No.: 18-4611<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is the motion of Defendants Marcus O. Hicks, Lt. A. Castro, and Sgt. A. Aravena (collectively, "Defendants") for summary judgment, ECF No. 88, against *pro se* plaintiff Shalik Coleman ("Plaintiff"). *See* ECF No. 25 ("FAC"). Plaintiff opposed the motion, ECF No. 89, and Defendants replied. ECF No. 90. Additionally, the parties provided supplemental briefing at the Court's request. ECF Nos. 115, 118, 121, 127, 129. The Court has considered all of the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motion is granted.

## I. BACKGROUND[1]

### A. Plaintiff's Prior Injuries

In 2010, prior to his incarceration, Plaintiff sustained a back injury in a motor vehicle accident and underwent significant surgery. ECF No. 88-1, Ex. A. ("Pl. Dep.") at 7:12–11:15. Later, in 2017, while incarcerated in Trenton State Prison, the pain from the injury and resulting surgery became "unbearable." *Id.* at 16:6–25. At that time, Plaintiff was sent to a local hospital

[1] "The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits accompanying [the] pending motion[] for summary judgment." *Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *1 n.1 (D.N.J. Jan. 31, 2017).

for an x-ray and MRI, which revealed that a screw from his prior surgery was fractured. *Id.* at 17:1–8. In February 2018, a neurosurgeon advised Plaintiff that he needed another surgery. *Id.* at 22:6–14. Before any surgery took place, however, he was transferred in September 2018 to East Jersey State Prison ("EJSP"). *Id.* at 23:14–21.

**B. The 2019 Hospital Ride**

On May 20, 2019, Plaintiff was scheduled to go from EJSP to Saint Francis Hospital for another MRI. *Id.* at 23:22–24:4. At approximately 7:00 a.m., Officers W. Greene ("Greene") and J. Kane ("Kane")—who were named as defendants in this action but were never served, ECF Nos. 33, 35—arrived to transport him for the appointment. ECF No. 88-3 ("D SUMF") ¶¶ 2, 4. Plaintiff initially refused to go to the hospital, as he believed that riding in the New Jersey Department of Corrections ("NJDOC") vans would make his injuries worse. *Id.* ¶ 5. He eventually got into the van after one of the officers directed him to do so. *Id.* ¶ 6. Plaintiff testified that the officers did not fasten his seat belt in the van. *Id.* ¶ 7.

According to Plaintiff, once they departed EJSP, the van was driven fast, though he does not specify how fast, hit a lot of potholes, and made sharp turns, which caused Plaintiff to be "tossed around" in the back of the van. *Id.* ¶¶ 8–9. At one stop on the way to the hospital, Plaintiff informed the officers that he was in pain. *Id.* ¶¶ 10–11. One of the officers responded that they would be at the hospital shortly. *Id.* ¶ 11.

When they arrived at the hospital, Plaintiff testified that he told the officers that he was in a lot of pain. *Id.* ¶ 13. Kane attempted to help Plaintiff out of the van, as Plaintiff's legs apparently gave out. *Id.* ¶¶ 13–14. As Kane was assisting Plaintiff out of the van, Plaintiff took one step before falling to the ground in the hospital parking lot. *Id.* ¶ 15. Plaintiff could not get up, and Greene went to get Defendant Sergeant Aravena ("Aravena"), who was posted at the hospital, for further assistance helping Plaintiff into the facility. *Id.* ¶ 16; *see also* Pl. Dep. at 41:17–24.

When Aravena arrived, he ordered Plaintiff to get up, but Plaintiff indicated that he was in pain and wished to see a doctor. D SUMF ¶ 17. After Plaintiff stated that he could not get up on his own, Aravena and Greene lifted Plaintiff up and placed him in a wheelchair, *id.* ¶ 18, although Plaintiff testified that the officers actually "threw" him into the chair from approximately three feet away. Pl. Dep. at 42:23–43:12. One of the officers then wheeled Plaintiff into the hospital. D SUMF ¶ 19.

Once inside, the treating physician ordered an MRI and CT scan and gave Plaintiff a neck brace. Pl. Dep. at 51:21–23. After administering these tests, the doctor told Plaintiff that he did not see any new injuries. SUMF ¶ 23; *see also* Pl. Dep. at 52:21–53:2. Although Plaintiff apparently did not suffer a particular injury, he testified that due to the van ride he was experiencing increased pain related to his preexisting injuries. Pl. Dep. at 45:7–12, 51:12–17, 72:10–19. Similarly, he stated that he did not suffer any injury when he fell from the van in the hospital parking lot. *Id.* at 44:5–10.

While Plaintiff was receiving treatment, he testified that he overheard a conversation between Aravena and Kane concerning an incident report about Plaintiff's fall from the van. D SUMF ¶ 21. Plaintiff apparently overheard Aravena tell Kane to "[g]et another report" and instructed him on "what to say in the report." Pl. Dep. at 46:24–47:3. Plaintiff, however, testified that he never saw the report. SUMF ¶ 22.[2]

After concluding that Plaintiff had not suffered any new injuries, the doctor discharged him from the hospital. SUMF ¶ 23; *see also* Pl. Dep. at 52:21–53:2, 53:17–19. Plaintiff requested to be sent back to EJSP in a medical van, but Aravena stated that they did not have one available. *Id.*

[2] Later, Plaintiff apparently "obtained a copy of the [alleged] fabricated report via an Open Public Records Act request." ECF No. 89, Ex. 1 ¶ 18; *see also id.*, Ex. 4.

at 53:20–25. The doctor added that he had "nothing to do with" Plaintiff's transportation and instead offered him a painkiller for the ride. *Id.* at 54:25–55:14; *see also* D SUMF ¶ 24.

Plaintiff was then placed in a wheelchair and transported back to the NJDOC van. Pl. Dep. at 56:10–13. Greene and Kane helped Plaintiff get into the van, though different officers drove Plaintiff back to EJSP. *Id.* at 56:16–18, 58:2–11. Plaintiff described this ride as "similar" to the ride to the hospital, as the driver was apparently "speeding," hitting "a lot of potholes," and braking "fast." *Id.* at 57:6–8, 59:5–9, 60:6–9.

When Plaintiff arrived back at EJSP, he told the officers there that he was unable to get out of the van on his own because he was in pain. *Id.* at 60:14–20. Several officers then removed Plaintiff from the van. *Id.* at 60:20–63:4. The officers brought Plaintiff inside EJSP, strip searched him, and sent him to the medical unit. *Id.* at 63:14–19. While this was occurring, he asserts that Defendant Lieutenant A. Castro ("Castro") was "allowing it to happen," "laughing about it," and "making supportive comments" to the other officers. ECF No. 89, Ex. 1 ¶ 20.

### C. Safety Issues in Prisoner Transportation Vans

Prior to Plaintiff's ride to the hospital, Defendant Marcus O. Hicks ("Hicks"), then acting commissioner of the NJDOC, and his staff attended a meeting held by the People's Organization for Progress ("POP") in November 2018. *See* ECF No. 118-1 ("D Suppl. SUMF") ¶¶ 1–2. At that meeting, POP presented several issues concerning the New Jersey state prison system, including complaints that they had received from prisoners concerning transportation in NJDOC vans. *Id.* ¶¶ 3–4. In response to these concerns, one of Hicks's deputies requested that POP provide more detailed information about the complaints they had received so that the NJDOC could investigate the issue. *Id.* ¶ 5; *see also* ECF No. 118-2 at 3.

Thereafter, in December 2018, two individuals associated with POP sent a letter to Hicks with undated "testimonials" from unidentified prisoners about the vans. D Suppl. SUMF ¶¶ 6–9;

*see also* ECF No. 89, Ex. 3 at 1. These testimonials asserted that prisoners were often unbuckled and unable to brace themselves during van rides. ECF No. 89, Ex. 3 at 4–5. Additionally, the letter from POP attached an article from students at Princeton University that described similar issues. D Suppl. SUMF ¶¶ 7–8; *see also* ECF No. 118-2 at 24–35. Although these materials indicated that "[t]here have been numerous injuries" from inmates riding in the vans, they largely lacked detail on the nature of such injuries or when they occurred. *See* ECF No. 89, Ex. 3 at 4–5.

Separately, a report published by another non-profit organization described three instances of inmates suffering injuries from crashes in these vans between 2009 and 2016. *See id.*, Ex. 2 at 18–19. One such incident from 2009, however, involved only "minor injuries" to the inmates in the van. *Id*.

### D. Procedural History

Plaintiff filed the operative amended complaint in March 2020. *See* FAC.[3] In June 2021, the Honorable John M. Vazquez, U.S.D.J., permitted the complaint to proceed against Defendants in their individual capacities. ECF No. 27.[4] After Defendants moved for summary judgment, ECF No. 88, the matter was transferred to the undersigned. ECF No. 91.

## II. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, [and]

[3] The Court notes that the FAC is not verified because it was not signed under the penalty of perjury. FAC at 12. Nevertheless, the Court has considered the allegations contained therein and finds that they do not affect the disposition of this motion. *See Hodge v. Warden of Dauphin Cnty. Prison*, No. 19-1573, 2021 WL 3578316, at *4 n.6 (M.D. Pa. July 14, 2021) (noting that an unverified complaint may not be considered as an affidavit on a motion for summary judgment), *report and recommendation adopted*, 2021 WL 3565786 (M.D. Pa. Aug. 12, 2021).

[4] This order did not identify the specific claims that the Court was permitting to proceed. *See generally* ECF No. 27.

other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in the light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). A factual dispute is "material" if "it bears on an essential element of the plaintiff's claim." *See Blunt*, 767 F.3d at 265 (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003)).

The moving party has the initial burden of proving the absence of any genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). To meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) ("'[T]he mere existence of a scintilla of evidence' favoring the non-moving party will not prevent summary judgment." (citation omitted)); *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) ("[A] plaintiff cannot rely on unsupported allegations [to survive summary judgment]."). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his

favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## III. DISCUSSION

The complaint appears to raise the following claims against Defendants under 42 U.S.C. § 1983.[5] First, Plaintiff asserts a supervisory liability claim against Hicks arising out of the "rough ride" to Saint Francis Hospital in the allegedly unsafe NJDOC van. FAC ¶¶ 11, 36–46, 50. Second, Plaintiff raises claims against Aravena for (i) excessive force when placing Plaintiff in a wheelchair, (ii) deliberate indifference to Plaintiff's serious medical needs in failing to call for immediate medical assistance and failing to call for a medical van to return him to EJSP, and (iii) conspiracy to issue a false report about Plaintiff's fall from the transport van. *Id.* ¶¶ 14, 43–46, 51–52. Third, Plaintiff asserts claims against Castro for (i) deliberate indifference to Plaintiff's serious medical needs upon Plaintiff's return to EJSP and (ii) failure to intervene in alleged excessive force used by officers who removed Plaintiff from the van. *Id.* ¶¶ 15, 47–48, 51–52.

### A. Supervisory Liability Claim Against Hicks

Plaintiff asserts a supervisory liability claim against Hicks relating to alleged injuries suffered during the May 2019 "rough ride" to Saint Francis Hospital. *Id.* ¶¶ 11, 36–46, 50. Specifically, he complains of purported injuries suffered because he was not provided a seatbelt in the NJDOC van and thus was unable to brace himself during the ride. ECF No. 89 at 12–13.

Hicks raises two arguments to obtain summary judgment on this claim. First, he contends that he is entitled to qualified immunity. ECF No. 88-2 at 16–18. Second, Hicks argues that the record is insufficient to impose supervisory liability on him. ECF No. 90 at 5; ECF No. 118 at 2–

---

[5] Given Plaintiff's pro se status, the Court construes the complaint liberally. *Jackson v. Bolandi*, No. 18-17484, 2020 WL 255974, at *2 (D.N.J. Jan. 17, 2020).

5. For reasons discussed below, the Court finds that Hicks is entitled to summary judgment on both grounds.

*i. Hicks Is Entitled to Qualified Immunity*

Hicks is entitled to qualified immunity with respect to Plaintiff's "rough ride" claim. An official is entitled to qualified immunity if the constitutional right allegedly violated was not "'clearly established' at the time of the defendant's actions." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 858 (3d Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "A right is clearly established when the law is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 715 (3d Cir. 2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Such a right may be established by Supreme Court precedent, binding Third Circuit precedent, or a "robust consensus of cases of persuasive authority in the Courts of Appeals." *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017) (citation omitted). And "[t]o determine whether the right is clearly established," the court must look to the state of the law when the relevant action occurred. *Id.*

At the time of Plaintiff's alleged injuries, there was no precedent or robust consensus to show a clearly established "constitutional right to being secured while in transit." *Fluker v. Cnty. of Kankakee*, 945 F. Supp. 2d 972, 988 (C.D. Ill. 2013), *aff'd*, 741 F.3d 787 (7th Cir. 2013). And although the Third Circuit does not appear to have issued binding precedent concerning deliberate indifference in the prisoner transportation context, *see Williams v. Whitaker*, No. 16-6379, 2020 WL 1164788, at *5 (E.D. Pa. Mar. 10, 2020), several other circuits have rejected the proposition that a prisoner has a constitutional right to a seat belt. *Fluker*, 945 F. Supp. 2d at 988 (citing *Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012), *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999), and *Smith v. Sec'y for Dep't of Corr.*, 252 F. App'x 301, 304 (11th Cir. 2007));

*see also Jimenez v. Travis Cnty. Sheriff's Dep't*, 856 F. App'x 534, 536 (5th Cir. 2021) ("[T]here is no constitutional right to seat belts on inmate transport vehicles."). Nor was there any clearly established constitutional right to non-negligent driving by government officials. *See, e.g.*, *Gamble v. Doe*, No. 18-3169, 2018 WL 6250626, at *3 (E.D.N.Y. Nov. 29, 2018) (noting that the Constitution does not "guarantee[] a prisoner's right to non-negligent driving by government employees" (citation omitted)); *Worthington v. Cnty. of Northampton*, No. 13-6292, 2013 WL 6077438, at *1 (E.D. Pa. Nov. 18, 2013) (same); *Bassett v. Klinkler*, No. 13-3391, 2014 WL 5444086, at *2 (D. Colo. Oct. 27, 2014) (same). Here, Plaintiff complains about the use of the NJDOC vans, which he asserts made it difficult for inmates to fasten their own seat belts, in conjunction with the officers' purportedly negligent driving. *See* Pl. Dep. at 33:10–17; ECF No. 89, Ex. 3 at 4–5; ECF No. 118-2 at 3; *cf. Baughman v. Hickman*, 935 F.3d 302, 308–09 (5th Cir. 2019) (holding that an officer's driving was at most negligent where the evidence indicated only that he accelerated "rapidly" and was unable to avoid hitting a pothole or speed bump). But given that courts have rejected any constitutional right for prisoners to be secured during transport and to non-negligent driving, any purported policy maintained by Hicks did not violate Plaintiff's "clearly established" rights under the Eighth Amendment. *Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009) (noting that even where there is a debate among the other federal circuits as to the existence of a right, such a right is not "clearly established" (citation omitted)). Because any action by Hicks did not violate such rights, he is entitled to qualified immunity on Plaintiff's "rough ride" claim.

*ii. There Is Insufficient Evidence to Impose Supervisory Liability*

Even if qualified immunity did not apply, the record is insufficient to impose supervisory liability on Hicks for the alleged "rough ride." A supervisor may not be held vicariously liable for asserted constitutional violations committed by his subordinates. *Palmer v. United States*, No. 21-

11721, 2022 WL 310208, at *5 (D.N.J. Feb. 1, 2022). Instead, a plaintiff must show that official's "personal involvement in the alleged wrongs" to impose supervisory liability. *Carson v. New Jersey Dep't of Corr.*, No. 16-5163, 2017 WL 131567, at *3 (D.N.J. Jan. 12, 2017) (citation omitted). This can be done by presenting evidence that the supervisor "personally participated" in the violation of a plaintiff's rights, directed others to violate his rights, or "had knowledge of and acquiesced to the alleged wrongs." *King v. Mansfield Univ. of Pennsylvania*, No. 15-159, 2019 WL 1003612, at *3 (M.D. Pa. Feb. 28, 2019), *aff'd*, No. 23-1708, 2024 WL 3901187 (3d Cir. Aug. 22, 2024). Alternatively, a plaintiff could show a supervisor's personal involvement by adducing evidence showing that the supervisor maintained a policy, practice, or custom that directly caused the violation of the plaintiff's constitutional rights. *Palmer*, 2022 WL 310208, at *5.

As Defendants argue, there is no evidence that Hicks "had any knowledge of a single inmate's transport for a hospital visit." ECF No. 88-2 at 6–7; *see also* ECF No. 118 at 5. Accordingly, there is no basis to impose supervisory liability on Hicks based on any alleged participation in, direction of, or knowledge of and acquiescence in the alleged rough ride to the hospital. *See Martinez v. Jones*, No. 12-1547, 2015 WL 12516224, at *13 (M.D. Pa. Dec. 11, 2015) (granting summary judgment to supervisory officials where the plaintiff failed to present evidence that these individuals participated in the specific misconduct), *report and recommendation adopted*, 2016 WL 4701542 (M.D. Pa. Sept. 8, 2016). Thus, Plaintiff's supervisory liability claim against Hicks can only proceed under the policy or practice theory.

However, the Court agrees with Defendants that Plaintiff has likewise not presented sufficient evidence to show a triable policy or practice claim against Hicks. ECF No. 118 at 2–5. To make out such a claim, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an

unreasonable risk of [an] Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Sarvey v. Wetzel*, No. 16-157, 2019 WL 235322, at *4 (W.D. Pa. Jan. 16, 2019) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001)). "The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to the plaintiff's, thereby suggesting deliberate indifference on the part of the supervisor." *Id.* (quoting *Counterman v. Warren Cnty. Corr. Facility*, 176 F. App'x 234, 240–41 (3d Cir. 2006)). In the absence of such a pattern, however, there are still "situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." *Brown v. Smith*, No. 20-8463, 2023 WL 120458, at *7 (D.N.J. Jan. 5, 2023) (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

There is insufficient evidence from which a reasonable juror could impose supervisory liability on Hicks under a policy or practice theory. First, the record lacks evidence showing a "pattern of past occurrences of *injuries like those* [Plaintiff allegedly] suffered."[6] *Sarvey*, 2019 WL 235322, at *7 (emphasis added). The relevant inquiry is whether there is a "pattern of known *injuries*," and not whether there is "a pattern of known *allegations*." *Beers-Capitol*, 256 F.3d at 137 (emphasis in original). And a mere handful of alleged injuries is insufficient to show such a pattern. *See Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240, 247 (3d Cir.

[6] The doctor who examined Plaintiff at the hospital concluded that he had suffered no new injury. SUMF ¶ 23; *see also* Pl. Dep. at 52:21–53:2. Rather, Plaintiff testified that due to the van ride he was experiencing increased pain related to his preexisting injuries. Pl. Dep. at 45:7–12, 51:12–17, 72:10–19.

2005) (concluding that the plaintiffs had failed to show a triable issue on supervisory liability where they identified "[a]t most[,] three prior [similar] incidents"); *Sarvey*, 2019 WL 235322, at *9 (finding the evidence insufficient to show deliberate indifference where a supervisory defendant "may have been on notice of two incidents of potentially relevant misconduct"); *Beers-Capitol*, 256 F.3d at 137 (finding that two alleged instances of misconduct by a subordinate did not constitute a "pattern of past occurrences" to show deliberate indifference); *Rand v. New Jersey*, No. 12-2137, 2015 WL 1116310, at *13 (D.N.J. Mar. 11, 2015) (finding that two prior similar incidents "over a number of years" was insufficient to show a pattern of occurrences to establish deliberate indifference).

Here, the record largely contains only vague references to purported injuries suffered in NJDOC vans by unidentified inmates on unspecified dates. *See* ECF No. 89, Ex. 3 at 4–5; ECF No. 118-2 at 24, 26, 31. For example, one inmate described suffering a "couple [of] bruises," when riding in a van to the hospital on an unspecified date and another described a similar experience without indicating when it happened, although it could not have been more recent than 2005. *See* ECF No. 89, Ex. 3 at 5; *cf. Calloway v. U.S. Marshals Serv.*, No. 05-420, 2007 WL 1875808, at *2 (W.D. Pa. June 27, 2007) ("[C]ircuit precedent is very clear that general knowledge of prior incidents of misconduct does not place supervisory personnel on notice that a particular incident might happen with sufficient probability to charge the supervisory personnel with the scienter requirement needed for deliberate indifference."). Otherwise, the record contains only three alleged instances that are provided with any amount of detail where inmates apparently suffered injuries in NJDOC vans. *Id.*, Ex. 2 at 18–19.[7] However, one of those incidents, which

[7] The report containing the evidence of these incidents was published in December 2022, three years after the alleged rough ride at issue in this case. *See* ECF No. 89, Ex. 2. Any evidence of accidents contained therein that occurred after Plaintiff's May 2019 hospital ride cannot

occurred in 2009—approximately ten years before Plaintiff's alleged "rough ride"—resulted in only "minor injuries" to the inmates in the van. *Id.*; *see also Heggenmiller*, 128 F. App'x at 247 (noting that evidence of other injuries that were not "sufficiently serious" could not support the existence of a pattern of similar injuries). And although one of the other incidents resulted in the death of an inmate, it involved clearly reckless driving as the van apparently "slammed into the rear of a flatbed truck." ECF No. 89, Ex. 2 at 18; *see also Heggenmiller*, 128 F. App'x at 247 (noting that evidence of injuries that were not "sufficiently similar" could not support the existence of a pattern of similar injuries). Based on the lack of specific evidence of other "known injuries," a reasonable juror could not find that Hicks was presented with a pattern of similar injuries and thus was deliberately indifferent. *Heggenmiller*, 128 F. App'x at 247 (affirming the granting of summary judgment to supervisory defendants where the evidence showed "[a]t most[,] three prior [similar] incidents"); *Sarvey*, 2019 WL 235322, at *9 (granting summary judgment to a supervisory official who "may have been on notice of two incidents of potentially relevant misconduct"); *Beers-Capitol*, 256 F.3d at 137 (affirming the granting of summary judgment on a supervisory liability claim where the plaintiffs presented only two allegations of potentially similar misconduct); *Rand*, 2015 WL 1116310, at *13 (granting summary judgment to a supervisor where there were only two prior similar incidents "over a number of years").

Second, a reasonable juror could not conclude that Hicks was deliberately indifferent on the basis that the "risk of constitutionally cognizable harm is so great and so obvious" from the use of the NJDOC vans. *Brown*, 2023 WL 120458, at *7 (citation omitted). Demonstrating

---

demonstrate Hicks's deliberate indifference, as he could not have been aware of events that had not yet occurred. *See Beers-Capitol*, 256 F.3d at 137 ("[A] successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff *before* the plaintiff's injury occurred." (emphasis added)).

deliberate indifference in this way "requires more than evidence that the defendant[] *should* have recognized the excessive risk and responded to it," but rather, "requires evidence that the defendant *must* have recognized the excessive risk and ignored it." *Beers-Capitol*, 256 F.3d at 138 (emphasis in original). The evidence here, which again largely amounts to allegations of unspecified and undated injuries during rides in NJDOC vans, is insufficient to meet this burden. *See Booher v. Wakefield*, No. 22-672, 2025 WL 2462759, at *6 (M.D. Pa. Aug. 26, 2025) (holding that the plaintiff could not establish that the risk of injury was "so great and so obvious" given a lack of evidence connecting the supervisory defendant to any alleged injuries); *Beers-Capitol*, 256 F.3d at 138 (stating that even if evidence suggests a supervisor's negligence concerning the risk of injury to inmates, that does not amount to "evidence from which it can be inferred" that the supervisor "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm" (alteration in original) (citation omitted)); *Miskovitch v. Hostoffer*, No. 06-1410, 2010 WL 2404424, at *14 (W.D. Pa. May 19, 2010) (finding that the risk of using particular restraints on prisoners was not "so great and so obvious" given that the Eighth Amendment did not prohibit such restraints), *report and recommendation adopted*, 2010 WL 2402934 (W.D. Pa. June 10, 2010); *Simon v. Clements*, No. 15-4925, 2016 WL 8729781, at *1 (C.D. Cal. June 10, 2016) ("The law is clear that inmates who are transported by correctional officers do not have a constitutional right to the use of seat belts.").

Given that the record lacks any indication that would permit a reasonable factfinder to conclude that Hicks was deliberately indifferent, Hicks is entitled to summary judgment on Plaintiff's supervisory liability claim against him. In any event, as discussed above, the Court also finds that Hicks is entitled to summary judgment on this claim based on qualified immunity.

**B. Claims Against Aravena**

Plaintiff appears to raise claims against Aravena for (i) excessive force when placing Plaintiff in a wheelchair, (ii) deliberate indifference to Plaintiff's serious medical needs at the hospital, and (iii) conspiracy to issue a false report about Plaintiff's fall from the van. FAC ¶¶ 14, 43–46, 51–52.

*i. Excessive Force*

Plaintiff asserts that Aravena subjected him to excessive force when placing him in a wheelchair at the hospital. *Id.* ¶ 43. "Excessive force claims require proof that force was applied 'maliciously and sadistically for the very purpose of causing harm.'" *Pugh v. Mooney*, No. 20-1273, 2024 WL 3521514, at *5 (M.D. Pa. July 23, 2024) (quoting *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 193 (3d Cir. 2021)). Additionally, a "de minimis use[] of physical force" is not constitutionally excessive "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Taylor v. Sanders*, No. 11-1291, 2012 WL 4104871, at *7 (M.D. Pa. Sept. 18, 2012) (quoting *Brooks v. Kyler*, 204 F.3d 102, 107 (3d Cir. 2000)).

Aravena is entitled to summary judgment on this claim because he applied only de minimis force. As an initial matter, it was necessary to apply some force to move Plaintiff because he told the officers that he was unable to get up. *Wesley v. Dombrowski*, No. 03-4137, 2007 WL 2571525, at *14 & n.32 (E.D. Pa. Aug. 31, 2007) (noting that it was necessary to apply force to move an inmate who claimed that he was "too weak to walk"). Further, Aravena's allegedly "toss[ing]" Plaintiff into a wheelchair, Pl. Dep. at 43:7–12, is "ultimately too insignificant to constitute the malicious and sadistic infliction of force necessary to establish an Eighth Amendment violation." *Wesley*, 2007 WL 2571525, at *14 (finding de minimis the defendants' "toss[ing]" of a prisoner "face-down onto a seat in a prison van, press[ing] his face into the seat cushion, [and] plac[ing] a knee into his back"); *see also Pimentel v. Cnty. of Fresno*, No. 10-1736, 2013 WL 6711594, at *4 (E.D. Cal. Dec. 18, 2013) (finding the officers' "toss[ing]" the plaintiff "into a wheelchair 'like a

sack of potatoes'" insufficient to rise to the level of an Eighth Amendment violation), *report and recommendation adopted*, 2014 WL 12778295 (E.D. Cal. Jan. 7, 2014). Finally, Plaintiff did not testify to any injuries suffered as a result of being "tossed" into the wheelchair, which is "indicative of the fact that the force utilized . . . was . . . de minimis." *Taylor*, 2012 WL 4104871, at *7. On this record, a reasonable juror could not conclude that Aravena acted "maliciously and sadistically for the very purpose of causing harm." *Pugh*, 2024 WL 3521514, at *5 (citation omitted). Thus, Aravena is entitled to summary judgment on the excessive force claim.

*ii. Deliberate Indifference*

Plaintiff appears to raise a deliberate indifference claim against Aravena based on (1) the failure to provide immediate medical attention in the hospital parking lot and (2) the failure to obtain a medical transport to bring Plaintiff back to EJSP. FAC ¶¶ 43, 45. To sustain these claims, "a plaintiff must show that defendants acted with deliberate indifference to his 'serious medical needs.'" *Robinson v. Tennis*, No. 11-1724, 2012 WL 4442586, at *2 (M.D. Pa. Sept. 24, 2012) (citation omitted). Deliberate indifference can occur where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Nothing in the record reveals deliberate indifference on Aravena's part in delaying Plaintiff's medical treatment. Plaintiff's testimony indicates that Aravena promptly facilitated his transfer to the emergency room from the hospital parking lot. Pl. Dep. at 42:6–43:17. Even if Aravena did not summon medical assistance to the parking lot, "a 'brief delay' in medical care for an injury that was not apparently life-threatening does not itself demonstrate deliberate indifference." *Kennedy v. PrimeCare, Inc.*, No. 24-841, 2024 WL 4554779, at *4 n.6 (M.D. Pa. Oct. 23, 2024) (quoting *Joh v. Suhey*, 709 F. App'x 729, 730–31 (3d Cir. 2017)); *see also Castro*

*v. Kastora*, No. 18-1029, 2018 WL 4538454, at *8 (E.D. Pa. Sept. 20, 2018) ("A five-hour delay in medical treatment does not rise to the level of deliberate indifference." (citing *Wilson v. Jin*, 698 F. App'x 667, 670–72 (3d Cir. 2017))). Accordingly, Aravena is entitled to summary judgment on any deliberate indifference claim based on a delay in medical treatment at the hospital.

Similarly, a reasonable juror could not conclude that Aravena was deliberately indifferent by not calling a medical van for Plaintiff. Aravena told Plaintiff that he did not have any medical vans available. Pl. Dep. at 53:19–25. Additionally, Plaintiff's treating physician did not indicate a need for Plaintiff to receive such transport. *Id.* at 54:16–55:5. Thus, the record does not reflect that Aravena prevented, delayed, or denied Plaintiff access to any necessary or recommended medical treatment by not providing a medical van. *See Ealy v. Sullen*, No. 13-2782, 2016 WL 1089147, at *4 (M.D. Pa. Mar. 21, 2016) (granting summary judgment to the defendants where "[t]he record [was] devoid of any facts that would indicate that defendants delayed or denied medical treatment"); *Miller v. Diguglielmo*, No. 07-2686, 2010 WL 1539965, at *3 (E.D. Pa. Apr. 14, 2010) (granting summary judgment where the record lacked evidence that the defendant "denied Plaintiff medical treatment, refused to provide such care, or delayed necessary medical treatment"). Accordingly, Aravena is entitled to summary judgment on any deliberate indifference claim based on the lack of medical transport.[8]

---

[8] Additionally, Aravena is entitled to summary judgment on any possible claim based on Plaintiff's van ride from the hospital back to EJSP. Nothing in the record suggests that Aravena was aware of the nature of the officers' driving to or from the hospital. Thus, although Plaintiff argues for a failure to protect claim against Aravena, *see* ECF No. 89 at 9, no reasonable juror could find Aravena liable under such a theory. *See Brown v. Phillips*, No. 16-2566, 2017 WL 11804918, at *2 (E.D. Pa. Feb. 27, 2017) (noting that a failure to protect claim requires showing that the officer "knew of and disregarded an excessive risk to [an inmate's] safety"). Additionally, because there is no evidence to suggest that Aravena knew of, let alone approved or acquiesced in, the allegedly erratic driving or had any policy-making authority, there is no basis to impose supervisory liability on him. *See Shuman v. Raritan Twp.*, No. 14-3658, 2016 WL 7013465, at *24–25 (D.N.J. Nov. 30, 2016) (describing the requirements for showing the two forms of supervisory liability).

*iii. Conspiracy to Issue a False Report*

Finally, Plaintiff appears to assert a claim against Aravena based on an alleged conspiracy to prepare a false incident report relating to his fall from the NJDOC van. *See* FAC ¶¶ 44, 52. "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (citation omitted). But "concealing a constitutional violation" by filing a false report "does not amount to a separate constitutional violation unless the victim of the concealment was deprived of his right of access to the courts." *Godson v. City of Philadelphia*, No. 24-6461, 2025 WL 757101, at *6 (E.D. Pa. Mar. 10, 2025) (citation omitted).

Plaintiff has presented no evidence of any separate violation of his constitutional rights, such as an inability to pursue legal claims, based on the alleged falsification of the incident report. *See Green v. N.J. State Police*, No. 04-7, 2006 WL 2289528, at *4 (D.N.J. Aug. 9, 2006) (granting summary judgment on a conspiracy claim where the plaintiff "failed to establish any constitutional injury resulting from the alleged conspiracy to cover-up the use of excessive force"); *Torres v. Allentown Police Dep't*, No. 13-3066, 2014 WL 4081477, at *8 & n.15 (E.D. Pa. Aug. 18, 2014) (noting that the plaintiff did "not contend that the alleged false reports prevented him from pursuing a separate cause of action"). Therefore, Plaintiff has suffered no constitutional injury from the asserted conspiracy and Aravena is entitled to summary judgment on this claim.

**C. Claims Against Castro**

Plaintiff appears to assert claims against Castro for (i) deliberate indifference to Plaintiff's medical needs upon his return to EJSP and (ii) failure to intervene in asserted excessive force that was applied to Plaintiff at that time. FAC ¶¶ 15, 47–48, 51–52. The only factual support for these claims is Plaintiff's declaration, which states that while he was being removed from the van by

other officers, Castro was "allowing it to happen," "laughing about it," and "making supportive comments" to the other officers. ECF No. 89, Ex. 1 ¶ 20.

*i. Deliberate Indifference*

Again, to sustain an Eighth Amendment claim based on the denial or delay of medical care, Plaintiff "must show that defendants acted with deliberate indifference to his 'serious medical needs.'" *Robinson*, 2012 WL 4442586, at *2. Deliberate indifference can occur where a prison official delays necessary medical treatment or prevents an inmate from receiving needed treatment. *Rouse*, 182 F.3d at 197.

No reasonable juror could conclude that Castro was deliberately indifferent in causing any delay in medical treatment. At most, Plaintiff's testimony indicates that there was a brief delay between his return to EJSP and his receipt of medical treatment there, *see* Pl. Dep. at 60:14–62:4, 63:14–25, 64:12–25, which is insufficient to present a triable deliberate indifference claim. *Kennedy*, 2024 WL 4554779, at *4 n.6 (citation omitted); *see also Castro*, 2018 WL 4538454, at *8 ("A five-hour delay in medical treatment does not rise to the level of deliberate indifference." (citation omitted)). Therefore, Castro is entitled to summary judgment on this claim.

*ii. Failure to Intervene*

Next, Plaintiff appears to assert that Castro failed to intervene when other officers allegedly used excessive force against him upon his return to EJSP. FAC ¶¶ 47–48. "A corrections officer may be liable under the Eighth Amendment for failing to stop an ongoing constitutional violation [of excessive force] if []he 'had a reasonable opportunity to intervene and simply refused to do so.'" *Atkinson v. Apodaca*, No. 23-142, 2025 WL 712871, at *9 (W.D. Pa. Mar. 5, 2025) (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). To succeed on a failure to intervene claim, a plaintiff must have a viable underlying excessive force claim. *Ramon v. Stone*, No. 18-16402, 2023 WL 3092189, at *9 (D.N.J. Apr. 26, 2023).

Plaintiff's claim against Castro for failure to intervene fails because there is insufficient evidence of an underlying use of excessive force. A "de minimis use[] of physical force" is not constitutionally excessive "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Taylor*, 2012 WL 4104871, at *7 (citation omitted). Plaintiff testified that he informed the officers when he returned to EJSP that he was unable to get out of the van, Pl. Dep. at 60:14–19, and thus it was necessary to apply some force to remove Plaintiff from the vehicle. *Wesley*, 2007 WL 2571525, at *14 & n.32. Further, even accepting Plaintiff's testimony that the officers "drag[ged]" him from the van, Pl. Dep. at 62:1–4, this limited application of force is not sufficient to show a violation of his Eighth Amendment rights. *See Solan v. Ranck*, No. 06-49, 2007 WL 141918, at *8 (M.D. Pa. Jan. 18, 2007) (finding that the officers' taking hold of, handcuffing, and "dragg[ing]" the plaintiff back to his cell was a de minimis use of force), *aff'd*, 326 F. App'x 97 (3d Cir. 2009); *Powell v. Marino*, No. 03-5420, 2004 WL 377662, at *6 (E.D. Pa. Feb. 25, 2004) (finding de minimis an officer "forcibly pull[ing] [the plaintiff's] arm behind his back causing pain to his shoulder . . . for a short period of time while moving [the plaintiff]"). Additionally, although Plaintiff testified that he was in pain while he was being removed from the van, he did not identify any particular injury that was caused by the officers "dragging" him into the facility. Pl. Dep. at 60:14–65:3. Such a lack of injury is "indicative of the fact that the force utilized . . . was . . . de minimis." *Taylor*, 2012 WL 4104871, at *7. On this record, no reasonable factfinder could conclude that the officers applied excessive force. *See Solan*, 2007 WL 141918, at *8.

Given that Plaintiff has not shown a viable underlying excessive force claim against the other officers, he necessarily cannot establish a failure to intervene claim against Castro. *Ramon*,

2023 WL 3092189, at *9. Accordingly, Castro is entitled to summary judgment on Plaintiff's failure to intervene claim.

### D. Punitive Damages

Finally, Defendants argue that the Court should dismiss any punitive damages claims. ECF No. 88-2 at 20. Given that no substantive claims remain against Hicks, Aravena, and Castro, the Court will grant them summary judgment as to any claim for punitive damages. *Johnson v. City of Reading*, No. 21-4860, 2025 WL 3565686, at *11 (E.D. Pa. Dec. 12, 2025) ("Because the Court concludes that none of Plaintiff's claims survive summary judgment, there remains no underlying cause of action upon which an award of punitive damages could be based.").

## IV. CONCLUSION

Accordingly, for the reasons stated above, **IT IS** on this 30th day of July, 2026;

**ORDERED** that Defendants' motion for summary judgment (ECF No. 88) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims against Hicks, Aravena, and Castro are **DISMISSED**; and it is further

**ORDERED** that the Clerk's Office shall serve a copy of this Opinion and Order upon Plaintiff by regular U.S. mail; and it is further

**ORDERED** that the Clerk's Office shall close this matter.

**SO ORDERED.**

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**